## Jasper D. Mackey v. Ed. Wrench.

DRAINAGE—*when rights of owner with respect to, limited.*
The owner of the dominant land is not entitled to discharge the
waters of his land at such points as he pleases where he has en-
tered into an arrangement for a mutual system of drainage.

Action commenced before justice of the peace. Appeal from the
Circuit Court of Piatt county; the Hon. WILLIAM G. COCHRAN, Judge,
presiding. Heard in this court at the November term, 1906. Af-
firmed. Opinion filed June 1, 1907.

REED & REED, for appellant.

LOTT R. HERRICK and M. R. DAVIDSON, for appel-
lee.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion
of the court.

Ed. Wrench brought suit before a justice of the
peace against Jasper D. Mackey to recover damages
to Wrench's land alleged to have been caused by a tile
drain constructed by Mackey upon his (Mackey's)
land, which flooded the land of Wrench. Such pro-
ceedings were had before the justice of the peace that
an appeal was prosecuted to the Circuit Court of Piatt
county, where a trial was had before the court without
a jury. Judgment was rendered in favor of Wrench
against Mackey in the sum of $1 and Mackey appealed.

It appears from the evidence that appellee owned
sixty acres of land lying west of a highway and that
appellant owned eighty acres of land on the east side
of such highway, the south line of the eighty acre tract
being forty rods south of the north line of appellee's
land; that the general slope of the surface of such
lands is from the north half of appellant's eighty acre
tract, and across his south forty, in a southwesterly
direction to a bridge, in such highway, near appel-
lant's south line, thence westerly across such high-

way and thence in a general southwesterly course across the land of appellee.

It is admitted by both parties to this controversy, that about the year 1890 or 1891 the then owners of all such lands entered into a mutual agreement and in pursuance thereof constructed or laid a system of tile drain upon said lands, the lower end or outlet of which was in a natural depression or waterway on appellee's land and about seventy rods southwesterly from the bridge heretofore spoken of; from that point the tile ran northeasterly to the bridge and thence across and what is now appellant's south forty to the north line of that forty, and thence northerly partly across appellant's north forty where it ended; that the greater part of such tile was eight inches in diameter and the balance was six inches in diameter (except a small part thereof, which may have been only five inches in diameter, leading to a pond on appellant's north forty); that connecting with said eight and six inch tile and as a part of such system of tile drain there were three lateral tile drains laid, two on the south forty, of what is now appellant's eighty acre tract, and one on the north forty of such eighty acre tract. It further appears from the evidence that this system of tile drain remained in use and undisturbed upon and across all of said lands from the time it was so laid in 1890 or 1891 until about the year 1905, when appellant, who had in the meantime become the owner of the south forty of his eighty acre tract mentioned, without the consent of appellee and against his objection, laid a new system of tile drain wholly upon his own land the lower end or outlet of which was within a few inches of his west line, opening upon the surface of the ground at the side of the highway and running from that point northeasterly almost parallel with the old tile and only a few feet from it and crossing it in two places, to a pond on the north forty of his eighty acre tract.

The evidence tended very strongly to show that in laying the new system of tile appellant cut into two laterals of the old drain and connected them with the new drain. Whether he did so connect such laterals and the condition of such laterals, connecting with the old drain, and whether or not much water was wont to flow in them, were questions about which there was considerable dispute upon the trial, but the court who heard the cause came to the conclusion that such laterals were in condition to meet the service for which they were originally laid, and that they were joined or connected by appellant with the new tile laid in 1905. A consideration of all the evidence satisfies us that in this finding the trial court was fully warranted and a review of the evidence upon that subject is not necessary.

The natural result of appellant's work in 1905, was to discharge waters that had formerly gone through the old system of *tile under the surface* to a point in appellee's field about seventy rods southwest of the bridge, upon the surface of the ground in the highway from whence they could, and would in case of heavy rains, *flow over the surface* of appellee's land and damage his crops.

Appellant seeks to justify the work so done by him in 1905 upon the theory that as the general slope of the lands involved was from his own lands to the southwest over and across the field of appellee he had a right to discharge the waters of his lands at such points as he pleased, if done in the course of good husbandry, and cites the cases of Peck v. Herrington, 109 Ill. 611, and Fenton & Thompson R. R. Co. v. Adams, 221 Ill. 201, in support thereof.

These cases, however, have no application here, as the opinions therein do not deal with rights of landowners who had established a *mutual system* of drainage.

Paragraphs 187 and 189 of chapter 42 of the Revised Statutes provide: "That whenever any ditch or drain

590    APPELLATE COURTS OF ILLINOIS.

VOL. 134.]    Lawrence v. Broadwell Special Drain. Dist.

has been heretofore, * * * or shall be hereafter constructed by mutual * * * agreement of owners of adjoining lands * * * so as to make a continuous line upon or across the lands of said several owners * * * then such drains shall be held to be a drain for the mutual benefit of all the lands so interested therein," and "that whenever drains have been or shall be so constructed * * * none of the parties interested therein shall, without the consent of all the parties, fill the same up or in any manner interfere with the same so as to obstruct the flow of water therein."

Under these sections the owners of lands who have established and constructed a system of drainage for their mutual benefit possess a right to have such system of drainage maintained as established.

Appellant may have the right under the doctrine announced in the case of Peck v. Herrington to improve and drain his own field in the course of good husbandry, even if by doing so he increases the flow of water upon his neighbor's land in a natural waterway or depression, but he has no right in doing so to disturb in any way the flow of waters which would pass off his premises through an outlet provided by a mutual system of drainage.

The judgment was right and is affirmed.

*Affirmed.*